UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JASON ROSE, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 09-104-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

What is the right way to set a broken arm? How long should the cast stay on? Will the bone mend completely, or are some permanent deformities and range-of-motion limitations to be expected? These are some of the questions at the heart of Jason Rose's medical malpractice claim. Kentucky courts do not trust juries to answer technical medical questions like these on their own. Instead, plaintiffs in medical malpractice cases must provide expert testimony establishing negligence and causation. Rose has not done so. Accordingly, the United States' motion for summary judgment, R. 43, is granted.

## BACKGROUND

Jason Rose is serving a 300-month sentence in federal prison. R. 17-1. On September 25, 2007, Rose was an inmate at the United States Penitentiary-Big Sandy in Inez, Kentucky. Because of a disciplinary violation (Rose has a long record of such violations, *see* R. 17-2), prison authorities had placed Rose in the Special Housing Unit. Shortly after lunch, Rose stuck his arms out through the food slot in his cell door to allow corrections officers Larry Miller and

Christopher Meek to remove his handcuffs. Rose claims that Miller and Meek violently pushed and twisted his outstretched arms, fracturing his left humerus bone.

Rose received basic treatment immediately after the injury. Prison medical staff gave him painkillers and immobilized his arm. R. 17-5 ¶ 2. Prison authorities arranged for Rose to see an orthopedic surgeon the very next day. *Id.* ¶ 4. The surgeon concluded that Rose's fracture did not require surgery and put a cast on his arm. *Id.* Throughout Rose's convalescence, Big Sandy medical staff performed follow-up examinations, took x-rays to make sure his arm was healing properly, and gave him pain medication. R. 17-5 ¶ 7. The cast was removed after approximately eight weeks. R. 45-1 ¶ 4.

On August 6, 2009, Rose filed a complaint against the United States under the Federal Tort Claims Act. R. 2. The United States filed a motion for summary judgment on December 10, 2009, R. 17, which the Court granted in part and denied it in part on June 7, 2010. R. 26. The Court dismissed all of Rose's claims other than his claim for medical malpractice. Rose alleged that Big Sandy officials provided him with negligent medical care after his injury. The Court allowed this claim to survive so that Rose would have an opportunity to obtain an expert witness. After eight months of discovery, the United States filed this renewed motion for summary judgment. R. 43.

**ANALYSIS**

The Federal Tort Claims Act conditions the United States' liability for the torts of its employees on state law. The Act waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tort] occurred." 28 U.S.C. § 1346(b). Rose's injury took place at USP

Big Sandy in Inez, Kentucky. Therefore, in order to prevail, Rose must establish a viable medical malpractice claim under Kentucky law. *See Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957); *see also Davis v. United States*, No. 08-184-ART, 1010 WL 3294224, at *3 (E.D. Ky. Aug. 20, 2010) (applying Kentucky law to FTCA claim brought by Big Sandy inmate). Kentucky imposes a special requirement on plaintiffs in medical negligence cases. Except in rare circumstances, "the plaintiff . . . is *required* to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006) (emphasis added); *see also Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). This requirement stems from the highly technical and complicated nature of most medical malpractice cases. *See Johnson v. Vaughn*, 370 S.W.2d 591, 597 (Ky. 1963).

The Court advised Rose of the expert witness requirement in its Memorandum Opinion and Order entered on June 7, 2010, and gave Rose an opportunity to obtain an expert. R. 26 at 8-10. *Id.* He has not done so. The only evidence in the record of Rose's attempt to locate an expert is a letter from Rose advising the Court that he had written to Dr. Kevin Pugh of the Pikeville Medical Center and had asked him to be an expert witness in his case. R. 38. Apparently, Rose's letter was not particularly persuasive. Dr. Pugh confirmed in a letter that he "do[es] not represent Jason Rose as an expert witness." R. 43-2.

Rose acknowledges that he has not been able to obtain an expert witness during the past eight months. R. 44 at 1. But he argues that he does not need an expert to prove his claim because the Big Sandy medical staff's errors were so apparent that a layman could infer negligence and causation from the evidence. *Id.* Although Kentucky law excuses the expert

3

witness requirement in cases where negligence and causation are "so apparent that laymen with a general knowledge would have no difficulty in recognizing" them, *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965), Rose's case does not fall within this limited exception. As the Kentucky courts have explained, this "layman exception" is very narrow. The typical case is "where the surgeon leaves a foreign object in the body" or amputates the wrong limb. *Andrew*, 203 S.W.3d at 170. In these kinds of cases, it does not take a trained physician to know that something went terribly wrong. Rose's claim, in contrast, involves questions that are far beyond a layman's ken. What is the proper way to set a broken arm? When is surgery required? How long should a cast stay on? Should the bone fully repair itself or are permanent osseous deformities to some degree normal? Answering these questions accurately requires a medical degree (or the assistance of an expert who has one). In a recent case, the Kentucky Court of Appeals rejected the plaintiff's contention that laymen could properly evaluate her claim that a doctor injured her while performing a range-of-motion exam. The court did not "believe that the average layperson knows of the appropriate manner in which to conduct a passive range of motion exam on a person with [the plaintiff's] spinal condition and other pre-existing injuries." *Andrew*, 203 S.W.3d at 171. Properly healing a broken arm is at least as complicated, if not more so, than performing a range-of-motion exam. Accordingly, the "layman exception" to Kentucky's medical expert requirement does not apply in Rose's case.

In contrast to the total dearth of expert evidence from Rose, the United States has provided several affidavits from Dr. Richard Ramirez, the Bureau of Prisons' Regional Medical Director. Based on a review of Rose's medical records and x-rays, Dr. Ramirez believes that Rose "received medical care consistent with the standard of a reasonable medical practitioner."

4

R. 17-5 ¶ 2; R. 43-3 ¶ 2; R. 45-1 ¶ 2. Dr. Ramirez further believes that Rose's "broken arm has healed normally, without any alignment problems or abnormalities." R. 43-3 ¶¶ 3, 5. And, in response to Rose's unsupported contention that Big Sandy medical staff removed his cast prematurely, R. 44 at 2, Dr. Ramirez states that Rose had his cast on for approximately eight weeks—the average amount of time for a patient with a broken upper arm. R. 45-1 ¶¶ 3-4. Dr. Ramirez believes that removing the cast after eight weeks was "medically appropriate." *Id.* ¶ 4.

Because he has not produced expert evidence establishing either the applicable standard of care or causation, Rose has failed to make a sufficient showing as to elements that are essential to his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Accordingly, there is "no genuine issue [of] material fact" as to these elements and the United States is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court recognizes, of course, that securing an expert witness is not particularly easy for a prisoner. But it is far from impossible. Indeed, just a few months ago, this Court reopened a prisoner's FTCA case after he obtained affidavits from two different doctors stating that the negligence of prison medical staff had exacerbated an eye injury. *Davis v. United States*, No. 08-184-ART, 2010 WL 5014533, at *4 (E.D. Ky. Dec. 3, 2010). Rose has had eight months to locate an expert witness. He has not done so. Nor has he filed a Rule 56(f) affidavit asking for more time. Summary judgment in favor of the United States is appropriate now.

CONCLUSION

Accordingly, it is **ORDERED** that the United States' motion for summary judgment, R. 43, is **GRANTED**. A separate judgment shall issue.

This the 7th day of March, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge